## WILLIAM F. RŒLOFSON AND WIFE v. CHARLES ATWATER.

1. The plaintiff below, living in Connecticut, agrees, through his agent in Cincinnati, where the defendant resides, to lend money to the latter, with interest at the rate of ten per cent. per annum. The money is advanced by means of a draft, drawn by his agent upon the plaintiff in Connecticut, which he accepted, making it, by his acceptance, payable in New York, where it was paid at maturity. The defendant's notes for the repayment of the loan are taken in Cincinnati, expressed to be payable in New York. *Held:* That, whether the transaction be treated as consummated, by the exchange of the notes and draft in Cincinnati, or as open until actual payment of the draft in New York, the contract is governed by the laws of Ohio, and being valid by its laws, a mortgage on land in this State, given to secure the payment of the notes, is valid.

2. A power of attorney, authorizing the attorney "to negotiate any loan or loans of money, etc., to contract any debt or debts, and to secure the same by executing" a mortgage on real estate, is sufficient to justify the agent in, and bind his principal by, receiving a draft, instead of cash, in payment of the money agreed to be loaned; and the draft being paid at maturity, the securities given for the repayment of the loan are binding from their delivery.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered by Gholson, J., in favor of the defendant in error, at the special term of June, A. D. 1855.

The facts sufficiently appear in the decision.

*C. P. James,* for plaintiffs in error.

*Taft, Key & Perry,* for defendant in error.

SPENCER, J., delivered the opinion of the court.

This is a petition in error to reverse a judgment rendered upon submission at special term. The facts of the case, as they appear in the pleadings and bill of exceptions, are simply these: In September, 1852, Emily Avery, one of the plaintiffs, then unmarried, executed a power of attorney, in due form of law, in favor of George Hatch, authorizing him, in her name and place, to sell and convey, for such price, and upon such terms, as he might think proper, all or any part of her real estate, wherever situated; and also, in her name, "to negotiate any loan or loans of money, etc., to contract any debt or debts, and to secure the same by executing in her name a mortgage therefor upon any of such real estate; and also, in her name, to demise and lease any such real estate; and to receive all such purchase-money, loans, and rents, and give receipts for the same; to collect debts, etc."—the said Emily "thereby ratifying and confirming all such sales made, loans negotiated, debts contracted, deeds, mortgages, or leases executed, receipts for moneys, bargains, and agreements, as shall be made or acknowledged in the premises." In virtue of this power, Hatch negotiated in Cincinnati with John D. Jones, as agent for Atwater, for a loan of $10,000, for five years from the 10th of September, 1852, with ten per cent. interest, payable semi-annually—interest and principal to be paid in New York; and thereupon a note was executed by Hatch, in the name and behalf of said Emily, in favor of the plaintiff, for the payment of $10,000, of the following tenor:

"$10,000.                    CINCINNATI, Sept. 10, 1852.

Five years after date, I promise to pay to the order of George Hatch ten thousand dollars, at the office of the Ohio Life Insurance and Trust Company, in New York, and if not paid at maturity, interest thereafter at the rate of ten per cent. per annum until paid, for value received.

                                    EMILY AVERY.
*By* GEORGE HATCH, *her Attorney in fact.*"

And ten other notes, of similar purport, for the payment of $500 each, at periodical intervals of six months. To secure the payment of these notes, Hatch executed a mort-- gage, in the name of Emily Avery, conveying certain real estate in the city of Cincinnati to said Atwater, conditioned to be void on payment of said notes. The notes and mortgage were delivered to Jones, as agent for Atwater, and at the same time, Jones, in his individual name, drew a draft upon Atwater, in favor of Hatch, for $10,000, payable one day after sight, and addressed to Atwater at New Haven, Connecticut, which draft was accepted by Hatch in lieu of cash, and the transaction was closed, subject, however, to be defeated should the draft not be paid. The draft was presented in due season by Hatch to Atwater, at New Haven, for acceptance; it was accepted, payable at the office of David H. Nevins, New York, and was paid by Nevins to Hatch, on its presentment for payment. At the date of this transaction, Atwater was a resident of Connecticut; the other parties resided in Cincinnati. Miss Avery subsequently intermarried with the plaintiff in error, Mr. Rœlofson. One of the interest notes falling due and remaining unpaid, an action was brought by Atwater to enforce payment, by sale of part of the mortgaged premises. It was contended, on the part of the defendants, that by the law of New York, where these notes were payable, securities given for the loan of money at more than seven per cent. are void absolutely; and as the notes were thus void by the law of New York, payment of them could not

be enforced in Ohio. But the court overruled the defense, and gave judgment for the plaintiff, Atwater, which we are now asked to reverse.

There are two points of view under which the rights of the plaintiff below may be considered:

1. Treating the transaction for a loan as consummated at the time when the mortgage was delivered.

2. Treating the transaction as open until actual payment of the money by Atwater to Hatch.

Under the first point of view, it seems to us, there can be no doubt that the parties treated the loan as complete when the papers were executed and exchanged at Cincinnati. The mortgage was delivered absolutely, and placed at once on record. The draft was given by Jones, in his own name, unqualifiedly, with full reliance by him and Hatch that it would be promptly honored, and was certainly treated as cash, or its equivalent. It resulted finally in cash, to the satisfaction of Hatch. Now, in this view of the matter, the transaction was complete on the 10th day of September, when made; and, although it might, perhaps, have been rescinded by Hatch, had the draft not been honored, yet when honored it was irrevocable, and related to the time of the making. In this point of view, the loan was essentially an Ohio transaction, and if so, notwithstanding it is to be repaid in New York, it is conceded by defendants' counsel that it must be governed by the laws of Ohio, which would hold it valid. But it is said, on the part of the defendants below, that Hatch had no authority to mortgage except to secure a loan of money, whereas, here, at the date and delivery of the mortgage, there was no loan of money in fact, but only a promise for a loan, and so the mortgage and notes had no effect until the money was absolutely received in hand. It seems to us that this view of the power given is entirely too limited. The authority is, "to negotiate any loan or loans of money, etc., to contract *any debt or debts*, and to secure the same by executing in her name a mortgage therefor, etc." Now, we apprehend that the power

to negotiate loans, and to contract debts therefor, includes the authority to contract for a loan *in futuro*, and, upon the making of such a contract, to give the proper security for its performance. So that when the requisition is for a loan of money in fact, for which a draft is given, resulting ultimately in payment, security may be given upon the receipt of the draft, which will be binding from its date, and not merely from the date of payment.

But, secondly, treating the securities as not absolutely binding, or operative, until there was a final payment of the money, by what law is the contract to be governed, or how is the case substantially altered ? The place where the contract for a loan was made was here in Ohio; the place where the securities were executed and delivered, on both sides, was here. The obligation to make payment, on the part of Atwater, was general. Wherever he might be found, the money could be demanded from him on the part of Hatch. He was under no obligation to pay in New York, and could not be called upon to place the money there. The contract was not made with reference to any such payment, and so was in no sense whatever a New York contract. On the contrary, the obligation to pay was created in Ohio, by the act of Atwater's agent there— acknowledged and ratified by the acceptance of the draft in New Haven. His acceptance to pay in New York was a new obligation as to the place of payment, having no reference to the terms of the loan itself, which had been previously fixed. Payment of the money in New York was not the making or the consummation of any agreement there. It was the fulfillment of an obligation, already devolved upon Atwater by the act of his agent in another State, the fulfillment of which in New York was done perhaps for the convenience of the parties, but certainly with no apparent intent to violate the policy of any law of the State of New York. There can be no question that Atwater was liable to pay the draft, drawn upon him at New Haven, according to its presentment, and that if

payment had there been made, the loan would have been valid. Instead of paying there, he agreed to place the money in New York for a consideration already received, and on that agreement, if. violated, was liable to an action. But if, in such case, Atwater was liable to an action for non-payment, the payment, when made, could not be considered unlawful.

In any view of the case, we are of opinion that the judgment below was correct, and should be affirmed.

Judgment affirmed.